739 So.2d 931 (1999)
STATE of Louisiana
v.
Willie F. CURTIS.
No. 99-KA-45.
Court of Appeal of Louisiana, Fifth Circuit.
July 27, 1999.
*934 Paul D. Connick, District Attorney, Terry M. Boudreaux, Assistant D.A., Thomas Butler, David Wolff, Gretna, LA, for Plaintiff-Appellee.
Thomas M. Calogero, New Orleans, LA, for Defendant-Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, Jr., SOL GOTHARD and ROBERT LOBRANO, Judge Pro Tempore.
DUFRESNE, Judge.
The Jefferson Parish District Attorney filed a bill of information charging the defendant, Willie F. Curtis, with illegal carrying of a weapon by a convicted felon, in violation of LSA-R.S. 14:95.1. The matter proceeded to trial before a twelve person jury, at the conclusion of which the defendant was found guilty as charged. The court thereafter sentenced the defendant to twelve years at hard labor. It is from this conviction and sentence that the defendant now appeals.

FACTS
On December 9, 1997, at approximately 11:57 p.m., Deputies Jody Fruchtnicht and Brian Schuyler of the Jefferson Parish *935 Sheriff's Office, stopped a gray 1995 Chevy Corsica on Jefferson Highway because the vehicle did not have a brake tag. As this was an area known as both a high crime and drug area, the officers ordered both the driver of the vehicle, Willie Curtis, and the front seat passenger, Jamar Daniels, to exit the vehicle. The defendant quickly exited the Corsica, slammed the door, and approached the rear of the car. Daniels did not immediately get out of the car, so Officer Schuyler told him again to exit. As Daniels was exiting the vehicle, Officer Schuyler walked to the passenger's side and shone his flashlight in the vehicle so that he could observe Daniels' hands. At that point, Officer Schuyler observed what appeared to be crack cocaine on the floorboard of the passenger's side. The officers then advised both subjects of their rights, placed them under arrest for narcotics violations, and secured them in the police unit. After the arrests, the officers performed an inventory search of the Corsica.
Officer Schuyler opened the passenger's side door and recovered the crack cocaine from the floorboard. Officer Fruchtnicht opened the driver's side door, and using his flashlight, illuminated the interior of the car. The officer immediately observed a gun on the driver's side of the vehicle, protruding up between the seat and the console. Officer Fruchtnicht retrieved the weapon from the driver's side and removed a live round from the gun. At trial, Officer Fruchtnicht testified that the Corsica driven by the defendant was registered to Noel Epps and that the gun was not registered.
After the state presented its case, the defense produced evidence to show that both the car and the gun belonged to Noel Epps, the girlfriend of Jamar Daniels. The defense also elicited testimony from Richard Sharp, a car salesman, to show that because of the space between the seat and the console, it would have been impossible for the gun to have been protruding upward in plain view as contended by the officers.

DENIAL OF MOTION TO SUPPRESS
In his first assigned error, the defendant contends that the trial court erred in denying his motion to suppress evidence. The defendant specifically contends that the deputy's search of the vehicle and the subsequent discovery of the cocaine[1] and the weapon was not supported by either the plain view doctrine or the automobile exception to the search warrant requirement. We find no merit to the defendant's argument. Based on the discussion which follows, we conclude that the weapon was lawfully seized pursuant to the automobile exception to the search warrant requirement.
Unlawful searches and seizures are prohibited by the Fourth Amendment to the United States Constitution and Article I, Section 5 of the Louisiana Constitution. Generally, searches may be conducted only pursuant to a warrant which has been issued by a judge on the basis of probable cause. LSA-C.Cr.P. art. 162. Warrantless searches and seizures are unreasonable per se unless justified by one of the specific exceptions to the warrant requirement. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The state bears the burden of proving that one of these exceptions applies. State v. Tatum, 466 So.2d 29 (La. 1985). The question of whether evidence was seized in violation of the Fourth Amendment is one for the trial judge, whose factual determinations are entitled to great weight on appeal. State v. Bailey, 97-493 (La.App. 5 Cir. 11/12/97), 703 So.2d 1325.
*936 In State v. Russell, 98-682 (La.App. 5 Cir. 1/13/99), 726 So.2d 444, this court discussed the automobile exception to the warrant requirement as follows:
Automobiles are accorded less protection against warrantless searches due to their inherent mobility and a citizen's lesser expectation of privacy. State v. Bailey, 97-493 (La.App. 5th Cir. 11/12/97), 703 So.2d 1325, 1328. The current standard for warrantless searches of automobiles under the Fourth Amendment was expressed in United States v. Ross, 456 U.S. 798, 824, 102 S.Ct. 2157, 2173, 72 L.Ed.2d 572 (1982). In that case, the United States Supreme Court held that police officers who have legitimately stopped an automobile and who have probable cause to believe that contraband is concealed within may conduct a search of the vehicle that is as thorough as a magistrate could require in a warrant. See also: California v. Acevedo, 500 U.S. 565, 580, 111 S.Ct. 1982, 1991, 114 L.Ed.2d 619 (1991).
The "automobile exception," to the warrant requirement is based upon the existence of probable cause to search and exigent circumstances. State v. Tatum, 466 So.2d at 31. Probable cause to search an automobile exists when the total circumstances allow the conclusion that there is a fair probability that contraband or evidence of a crime will be found in a particular location. State v. Pittman, 95-382 (La.App. 5th Cir.10/1/96), 683 So.2d 748, 764. For constitutional purposes, there is no difference between seizing and holding a car before presenting the probable cause issue to a magistrate and carrying out an immediate search without a warrant. State v. Tatum, 466 So.2d at 31; State v. Pittman, 683 So.2d at 764. Given probable cause to search, either course is reasonable under the Fourth Amendment and Louisiana Constitution. State v. Tatum, 466 So.2d at 31; State v. Pittman, 683 So.2d at 764.
Exigent circumstances exist when it is impractical to obtain a warrant due to the possibility that the car could be moved either by its occupants, if not arrested, or by someone else. State v. Tatum, 466 So.2d at 31-32; State v. Pittman, 683 So.2d at 764. An immediate warrantless search is therefore constitutionally permissible when the car is movable, the occupants are alerted and the car's contents may never be found again if a warrant must be obtained. State v. Tatum, 466 So.2d at 32; State v. Pittman, 683 So.2d at 764; State v. Zapata, 97-1230 (La.App. 5th Cir.5/27/98), 713 So.2d 1152, 1160.
Applying these principles to the instant case, we find that both probable cause and exigent circumstances existed so as to justify the search and subsequent seizure of the weapon. In the course of ordering the occupants out of the car pursuant to a valid traffic stop, Officer Schuyler observed crack cocaine in plain view on the floorboard of the vehicle. Moreover, an immediate search of the vehicle was necessitated by the car's location in a high crime area at night. Also the possibility existed that someone, including the car's owner, could move the car and any evidence therein.[2]
Given these circumstances, we find no error in the trial court's denial of the defendant's motion to suppress the evidence. Accordingly, this assignment lacks merit.

DENIAL OF MOTION IN LIMINE
In this assignment, the defendant complains that the trial judge erred in denying his motion in limine which sought to exclude evidence of the cocaine that was found by Officer Schuyler on the floor-board *937 of the passenger's side of the vehicle.
In the present case, defense counsel filed a motion in limine seeking to preclude the admission of other crimes evidence and more particularly of the discovery of the cocaine which occurred prior to the discovery of the weapon which forms the basis for the instant charge. After listening to the arguments of counsel, the trial court denied the defendant's motion in limine, stating as follows:
This Court finds that the fact that there was cocaine found in the vehicle under the circumstances of that stop is part of the res gestae that does, in fact, tell the complete story, and that its probative value clearly outweighs any prejudicial value.
Generally, evidence of other crimes is inadmissible at trial because of the substantial risk of grave prejudice to the defendant. While our Code of Evidence prohibits the use of evidence of other crimes or wrongful acts to prove the character of a person in order to show that he acted in conformity therewith, such evidence is admissible "when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding." LSA-C.E. art. 404B(1). Formerly known as "res gestae," evidence that constitutes an integral part of the crime is admissible without prior notice to the defense. State v. Hopson, 97-509 (La.App. 5 Cir. 11/25/97), 703 So.2d 767.
In State v. Brewington, 601 So.2d 656 (La.1992), the Louisiana
Supreme Court stated:
This court has approved the admission of other crimes evidence when it is related and intertwined with the charged offense to such an extent that the state could not have accurately presented its case without reference to it. State v. Boyd, 359 So.2d 931, 942 (La.1978); State v. Clift, 339 So.2d 755, 760 (La. 1976). In such cases, the purpose served by admission of other crimes evidence is not to depict the defendant as a bad man, but rather to complete the story of the crime on trial by proving its immediate context of happenings near in time and place. McCormick, Law of Evidence 448 (2d ed.1972). The concomitant other crimes do not affect the accused's character, because they were done, if at all, as parts of a whole; therefore, the trier of fact will attribute all of the criminal conduct to the defendant or none of it. And, because of the close connection in time and location, the defendant is unlikely to be unfairly surprised. 1 Wigmore, Evidence Sec. 218 (3d ed.1940). State v. Haarala, 398 So.2d 1093, 1097 (La.1981).
In the present case, the evidence of the discovery of the cocaine formed an inseparable link in the continuous chain of events leading to the discovery of the weapon at issue in these proceedings. The evidence was used merely to complete the story of the crime on trial and allow the state to accurately present its case. See State v. Moore, 26,329 (La.App. 2 Cir. 8/17/94), 642 So.2d 679 and State v. Armentor, 94-745 (La.App. 3 Cir. 2/1/95), 649 So.2d 1187, writ denied, 95-0557 (La.6/30/95), 657 So.2d 1027. Accordingly, we find that the trial court did not err in denying the defendant's motion in limine which sought to exclude evidence surrounding the discovery of the cocaine. This assignment is without merit.

JUROR CHALLENGES
The defendant argues that the trial court erred in denying his challenges for cause during voir dire of three prospective jurors. He specifically asserts that jurors Janet Parker, Donna Guillory, and Frances Koonce should have been excused for cause because on their relationships to law enforcement personnel.
LSA-C.Cr.P. art. 797 provides, in pertinent part, as follows:

*938 The state or the defendant may challenge a juror for cause on the ground that:
* * *
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
(3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict;
It is well settled that relationship to a law enforcement officer is not, of itself, grounds for a challenge for cause. Rather, the question presented is whether the prospective juror could assess the credibility of each witness independent of his or her relationship with members of law enforcement. State v. Morris, 96 1008 (La.App. 1 Cir. 3/27/97), 691 So.2d 792, writ denied, 97-1077 (La.10/13/97), 703 So.2d 609.
A challenge for cause should be granted, even when a prospective juror declares his or her ability to remain impartial, if the juror's responses as a whole reveal facts from which bias, prejudice or inability to render judgment according to law may be reasonably implied. However, when a prospective juror has voiced an opinion seemingly prejudicial to the defense, but after further inquiry, the juror demonstrates the ability and willingness to decide the case impartially according to the law and evidence, a challenge for cause is not warranted. The trial judge is afforded great discretion in determining whether cause has been shown to reject a prospective juror, and such determinations will not be disturbed on appeal unless a review of the voir dire as a whole indicates an abuse of that discretion. State v. Alberto, 95-540 (La.App. 5 Cir. 11/28/95), 665 So.2d 614, writ denied, 95-1677 (La.3/22/96), 669 So.2d 1222, writ denied, 96-0041 (La.3/29/96), 670 So.2d 1237.
In the present case, the defense attorney challenged Janet Parker for cause because her ex-husband was a retired Jefferson Parish Sheriffs deputy, and because her son-in-law used to be a detective with the district attorney's office. However, when asked whether she would give more weight to the testimony of a deputy than she would to any other witness, she responded that she would not. When asked whether she knew of any reason that she could not serve as a fair and impartial juror, she responded that she did not. Finally, she stated that the fact that her son-in-law used to be a detective with the district attorney's office would not in any way affect her ability to serve as a juror.
The defense attorney also challenged Frances Koonce for cause because she was employed by the Jefferson Parish Sheriffs Office as a school crossing guard and because her fiancé was a deputy sheriff with the Jefferson Parish Sheriffs Office. When asked whether her employment or her fiancé's employment would affect her ability to be a fair and impartial juror, Ms. Koonce responded that it would not. She responded affirmatively when asked whether she could listen to the evidence and thereafter apply the law as provided in the trial judge's instructions.
Finally, the defense attorney challenged Donna Guillory for cause because her husband was employed as a detective with the Jefferson Parish Sheriffs Office. When asked whether the fact that her husband was so employed would affect her ability to serve as a fair and impartial juror, Mrs. Guillory responded that it would not. She, too, responded affirmatively when asked whether she could listen to the evidence and thereafter apply the law as provided in *939 the trial judge's instructions. When asked whether she would give more weight to the testimony of a deputy than she would to any other witness, she responded that she would not.
In the present case, all three prospective jurors indicated that they could be fair, impartial, and unbiased, despite any present or past associations with law enforcement personnel. Based on a review of the entire voir dire, we find that the trial judge did not abuse his discretion in denying the defendant's challenges for cause of these prospective jurors. Accordingly, we find that the issues raised by the defendant in this assignment of error are without merit.

REFERENCE TO PREDICATE CONVICTION
On appeal, the defendant complains that the state, during voir dire, attempted to inform the jury venire that a conviction pursuant to LSA-R.S. 14:95.1, required a predicate conviction of a serious nature. He complains that the prosecutor, by making references to the enumerated felonies, was purposely trying to circumvent the trial court's ruling that no reference be made to the defendant's predicate conviction.
Prior to trial, the judge granted the defendant's motion in limine which precluded the state from introducing any evidence regarding the defendant's previous felony conviction and allowed the defendant to stipulate that he was a convicted felon within the parameters of LSA-R.S. 14:95.1. However, during voir dire questioning, the prosecutor made references to the types of felonies required to sustain a conviction pursuant to LSA-R.S. 14:95.1. He specifically read the list of enumerated crimes to the jury venire and attempted to convey that the crimes listed were of a violent nature.
Defense counsel consistently objected to the prosecutor's references to the enumerated felonies, prompting, at one point, the following discussion:
Mr. Calogero: Judge, Mr. Wolff is simply attempting to convey to the jury at this time again that Mr. Curtis has been convicted of some violent offense and that's the impressions he's attempting to lay. We're stipulating he's a convicted felon. There's no needhe's specifically trying to tell them that you're not going to be able to hear what the crime is and that's not proper.
Mr. Wolff: I need to find out if by not hearing what the specific crime is that it's going to create some sort of doubt in their mind as to whether or not the charge of 95.1 has been proven. I need to get their feelings on that, is that going to create doubt.
Mr. Calogero: And it's certainly more prejudicial than probative. The element is already stipulated to. To get them to start wondering whether he is, first, a murderer, an armed robber, and so forth, or a burglar, would only create undue prejudice.
The Court: I understand your objection. I think that the State does have a right to ask the questions in a sense that he's going to ask it to find out whether or not these individuals, in fact, will have any difficulty with not hearing it. I mean, you're not going to tell them anything about the crimes?
Mr. Wolff: No, sir.
The Court: Or even suggest?
Mr. Wolff: No, sir. I'm going to ask them if they're willing to take that to be a lack of evidence and something that's going to create doubt in their mind.
The Court: I'm going to allow him to do that.
We find that the arguments set forth by the defendant in this assignment of error are not supported by the record. In the present case, the prosecutor never informed the potential jurors of the specific *940 crime of which the defendant was previously convicted. He merely informed the jurors of various crimes enumerated in LSA-R.S. 14:95.1 in an attempt to determine whether the jurors would automatically conclude that there was a lack of evidence because they were not advised of the particular felony. Given these circumstances, we find that the trial judge did not err by overruling the defendant's objections to the prosecutor's references during voir dire to the various felonies enumerated in LSA-R.S. 14:95.1. Accordingly, this assignment is without merit.

REFERENCE TO THE DEFENDANT'S FAILURE TO TESTIFY
The defendant contends that the trial court erred in denying his motion for mistrial after the state referred to his anticipated refusal to testify. The defendant specifically complains about the following comment that the prosecutor made during voir dire:
You heard Mr. Calogero stand up during the first round of voir dire and say that we're going to admit that Willie Curtis is a convicted felon. Well, if that admission is accepted into evidence during the trial, you-all will not hear what that conviction is for.
Defense counsel objected to this comment and subsequently moved for a mistrial, arguing in part, that the prosecutor inferred that the defendant would not be testifying. The trial court denied the defendant's motion for mistrial.
LSA-C.Cr.P. art. 770 provides in pertinent part that "[u]pon motion of the defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to ... the failure of the defendant to testify in his own defense."
In the present case, the comment in question can in no way be construed as a reference, either direct or indirect, to the defendant's anticipated failure to testify. Rather, the comment was made in an effort to see if the defendant's stipulation that he had a prior conviction would hinder the jury in its deliberations.
Accordingly, we find that the trial judge did not err in denying the defendant's motion for mistrial. This assignment likewise is without merit.

EVIDENCE OF OTHER CRIMES
In this assignment of error, the defendant contends that the trial court erred in denying his motions for mistrial based on the state's repeated references to other crimes. The defendant complains that the district attorney deliberately elicited impermissible evidence of other crimes from Officer Schuyler and thereafter, commented on that testimony during his closing argument.
The defendant specifically complains about the following testimony by Officer Schuyler given in response to the prosecutor's questions:
Q: [District Attorney] If you had wanted to, could you have booked Jamar Daniels with a 95E, that being possession of controlled dangerous substances and possession of a firearm at the same time?
A: [Officer Schuyler] No, sir, he wasn't in possession of the gun.
Q: So, the fact that you did not feel that he had possession of that gun, you weren't going to book him, you weren't going to put a gun charge on him, correct?
A: Right.
Q: Willie Curtis was a different story though, correct?
A: Correct.
A: Willie Curtis was booked with both, right?
A: Right.
The defense attorney objected to this testimony and requested a mistrial on the *941 ground that it constituted impermissible evidence of other crimes. The trial judge denied the motion for mistrial, concluding that the testimony constituted res gestae.
The defendant also complains because the prosecutor, during closing argument, commented as follows:
... He's not very close with Jamar Daniels and there would be no reason for him to be out at midnight with Jamar Daniels unless it was something very important. They don't have the type of relationship where Jamar Daniels would come by and say, "Come on, Willie, let's go get some tacos for my girlfriend." She said that they met up on occasion, but they weren't close. Again, why are they out there at midnight? They're out there committing a crime. It's not an innocent venture to Taco Bell.
The defense attorney objected to this comment on the basis that "out there committing crimes" was an impermissible reference to other crimes, which amounted to an attempt to give the jury the impression that the defendant and Daniels were wreaking havoc on society. The district attorney stated that he was referring to the fact that cocaine was found in the vehicle. The trial judge denied the motion for a mistrial.
According to LSA-C.Cr.P. art. 770, "... a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to ... another crime committed or alleged to have been committed as to which evidence is not admissible."
In the present case, the complained of remarks do not refer to inadmissible evidence of other crimes. As previously discussed in this opinion, evidence relating to the discovery of the cocaine was admissible pursuant to the doctrine of res gestae embodied in LSA-C.E. art. 404(B)(1). Accordingly, the trial judge did not err in denying the defendant's motions for mistrial. This assignment lacks merit.

IMPROPER REBUTTAL ARGUMENT
The defendant contends that the trial court erred in denying his motion for mistrial based on improper rebuttal argument by the state. The defendant specifically complains about the following argument:
Because if you are victimized and a police officer comes out and documents that report and it doesn't meet his expectations, Mr. Calogero, then you're out of luck. You're out of luck. You don't have a case. And I hope if that police officer comes out and documents a report about a crime that happened to you, I hope what the police officer believes is relevant is the same as what this man believes is relevant.
The defendant asserts that this rebuttal argument was improper and warrants reversal as it amounted to a plebiscite on crime as well as a personal attack on opposing counsel.
LSA-C.Cr.P. art. 774 provides the scope of closing argument as follows:
The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.
The argument shall not appeal to prejudice.
The state's rebuttal shall be confined to answering the argument of the defendant.
In the present case, our review of the record reveals that defense counsel, in his closing argument, attacked the sufficiency of the police report, suggesting that the report failed to include all of the facts that were relevant to the issue of the defendant's guilt or innocence. Moreover, during his questioning of the police officers, defense counsel questioned them about the police report and the importance of putting all relevant facts in their reports. The *942 prosecutor, in the present case, was merely attempting to answer the argument of defense counsel.
Therefore, pursuant to LSA-C.Cr.P. art. 774, we find that the prosecutor's rebuttal to the defendant's argument was proper and that the trial judge did not err in overruling defense counsel's objection.
We further note that even if remarks made during closing argument are considered improper under LSA-C.Cr.P. art. 774, a conviction will not be reversed unless the reviewing court is thoroughly convinced that the remarks influenced the jury and contributed to the verdict. State v. Spencer, 93-571 (La.App. 5 Cir. 1/25/94), 631 So.2d 1363, writ denied, 94-0488 (La.2/3/95), 649 So.2d 400. There is nothing in the present record which suggests that the remarks of the prosecutor, in any way, influenced the jury or contributed to the verdict. Likewise, we find this assignment to be without merit.

MULTIPLE VERDICTS
On appeal, the defendant also argues that the trial court erred in denying his motion for mistrial based upon the irregularity of the jury verdicts and the subsequent redeliberations.
In the present case, following deliberations, the jury returned to the courtroom and handed in the verdict form. As the form merely indicated guilty, the judge gave the form back to the foreperson and instructed her to write the appropriate crime on the form. The foreperson complied. The clerk thereafter read the verdict indicating that the jury found the defendant guilty of attempted illegal carrying of a weapon by a convicted felon. Pursuant to a defense motion, the judge polled the jury, resulting in a vote of ten "yes" and two "no." The court ordered that the verdict of the jury be recorded. Immediately thereafter, a juror indicated that some confusion existed and that the polling was inaccurate. Following an off-the-record discussion, the court gave the jury another verdict form to ensure that the verdict recorded was the true will and intent of the jury. The judge instructed the jury to go back to the jury room, complete the form properly in accordance with the vote of the jury, and then to immediately return to the courtroom. Defense counsel objected to this proceeding and moved for a mistrial, expressing his concern that the jurors did not respond accurately to the poll. The trial judge denied the motion, stating in part that, "it is clear to me that this foreperson changed the verdict of the jury on her own and there's obvious confusion. These jurors expected that what they voted on would be read here in Court."
The jury subsequently returned to the courtroom and handed in a new verdict form. The clerk read the form which indicated that the jury found the defendant guilty of illegal carrying of a weapon by a convicted felon. A polling of the jury indicated a vote of eleven "yes" and one "no." The court ordered that the verdict be recorded by the clerk.
The defendant now asserts that the multiple deliberations and verdicts created a gross legal defect in the proceedings which warranted the granting of a mistrial. He further contends that the redeliberation, after a valid verdict, was outside the trial court's discretion and it was improper to invite inquiry by the court as to the dynamics of the deliberations, in abridgment of LSA-C.E. art. 606B.
LSA-C.Cr.P. art. 775 provides, in pertinent part, that "[a] mistrial may be ordered, and in a jury case the jury dismissed, when ... there is a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law." Whether a mistrial should be granted is within the sound discretion of the trial court, and the denial of a motion for mistrial will not be disturbed on appeal absent an abuse of that discretion. State v. Brown, 96-1002 (La. App. 5 Cir. 4/9/97), 694 So.2d 435, writ *943 denied, 97-1310 (La.10/31/97), 703 So.2d 19.
In the present case, we have reviewed both the codal articles and jurisprudence relating to the proper rendering of verdicts. There were no cases found which were directly on point with the instant situation. However, we find that under the circumstances presented herein, the trial judge did not err in denying the defendant's motion for mistrial.
LSA-C.Cr.P. art. 810 provides for the form of a verdict as follows:
When a verdict has been agreed upon, the foreman shall write the verdict on the back of the list of responsive verdicts given to the jury and shall sign it. There shall be no formal requirement as to the language of the verdict except that it shall clearly convey the intention of the jury.
The foreman of the jury shall deliver the verdict to the judge in open court.
LSA-C.Cr.P. art. 811 then provides for receipt and recordation of a verdict:
If the verdict is correct in form and responsive to the indictment, the court shall order the clerk to receive the verdict, to read it to the jury, and to ask: "Is that your verdict?" If the jury answer "Yes," the court shall order the clerk to record the verdict and shall discharge the jury.
Finally, LSA-C.Cr.P. art. 813 provides the procedure for improper verdicts as follows:
If the court finds that the verdict is incorrect in form or is not responsive to the indictment, it shall refuse to receive it, and shall remand the jury with the necessary oral instructions. In such a case the court shall read the verdict, and record the reasons for refusal.
Comment (a) to that article reads as follows:
Former R.S. 15:402 and the jurisprudence make it clear that until a verdict is received and recorded, it is not a verdict, and the jury has the right to alter it. See State v. Owens, 193 La. 505, 190 So. 660 (1939). Although the problem has not arisen, what can occur between the time of the reception of the verdict and the dismissal of the jury should be considered. The judge can receive a verdict and, thereafter, realize that it is not responsive. If the jury has not been dismissed, there is no reason why the judge may not set aside the verdict and remand the jury. This article handles that situation.
While this comment addresses the possible action a trial judge may take when it realizes that a verdict is not responsive, it does not consider the action, if any, a trial judge may take when a juror expresses that the polling and recorded verdict do not reflect the true intention of the jury. In the present case, the jury had already deliberated and reached a verdict but the foreperson obviously wrote the wrong verdict on the form. Despite the fact that the verdict had already been recorded[3], we find that the trial judge, given the unique circumstances of this case, handled the matter appropriately and in the only way possible to ensure an accurate verdict.
As part of this assignment, the defendant also contends that the trial judge violated the provisions of LSA-C.E. art. 606(B) by inquiring into the dynamics of the deliberation process. In the present case, a juror merely expressed to the court that some confusion existed. The juror did not testify about the deliberation process or the validity of the verdict. Thus, we find that LSA-C.E. art. 606B is not applicable to the instant situation. The arguments raised by the defendant in this assignment of error lack merit.

*944 SUFFICIENCY OF THE EVIDENCE

In his final assigned error, the defendant challenges the sufficiency of the evidence used to convict him. The defendant specifically contends that the state failed to prove his guilty knowledge that the weapon was in the vehicle. To support this argument, the defendant points to the following facts: (1) the weapon was not owned by the defendant; (2) the vehicle was not owned by the defendant; (3) the defendant made no admissions linking himself to the weapon; and (4) the weapon was not discovered on the defendant's person.
The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Rosiere, 488 So.2d 965 (La.1986). When circumstantial evidence is used to prove the commission of the offense, LSA-R.S. 15:438 mandates that "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypotheses of innocence." The requirement of LSA-R.S. 15:438 does not establish a standard separate from the Jackson standard, but rather provides a helpful methodology for determining the existence of reasonable doubt. Ultimately, all evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. State v. Guccione, 96-1049 (La.App. 5 Cir. 4/29/97), 694 So.2d 1060, writ denied, 97-2151 (La.3/13/98), 712 So.2d 869.
In the present case, the defendant was convicted of illegal carrying of a weapon by a convicted felon, in violation of LSA-R.S. 14:95.1. To convict a person of that offense, the state must prove beyond a reasonable doubt the possession of a firearm, a previous conviction of an enumerated felony, that ten years have not elapsed since completion of the sentence, and general intent to commit the offense. State v. Lamothe, 97-1113 (La.App. 5 Cir. 6/30/98), 715 So.2d 708, cert. granted, case remanded, 98-2056 (La.11/25/98), 722 So.2d 987, on remand, 97-1113 (La.App. 5 Cir. 6/1/99).
Constructive possession of a firearm, as opposed to actual possession, satisfies the possession element of LSA-R.S. 14:95.1. Constructive possession is a legal term describing the situation in which a person who is not in actual possession of an object can nevertheless be considered in legal possession of the thing if it is subject to his dominion and control. State v. Francis, 95-194 (La.App. 5 Cir. 11/28/95), 665 So.2d 596. A defendant's dominion and control over a weapon constitutes constructive possession, even if it is only temporary in nature and even if control is shared. However, mere presence in an area where a firearm is found, or mere association with an individual found to be in possession of a firearm, does not necessarily establish possession. In addition, our jurisprudence has added another aspect of awareness to the offense of LSA-R.S. 14:95.1. Therefore, the state must also prove that the offender was aware that a firearm is in his presence and that he had the general criminal intent to possess the weapon, i.e., a knowing and intentional possession is necessary for a violation of LSA-R.S. 14:95.1. State v. Lamothe, supra; State v. Evans, 29,675 (La. App. 2 Cir. 9/24/97), 700 So.2d 1039, writ denied, 97-2942 (La.1/9/98), 705 So.2d 1121.[4] The determination of whether *945 there is possession sufficient to convict depends on the particular facts of the case. State v. Francis, supra.
In the present case, defendant stipulated to the fact that he was a convicted felon and that his conviction was within the ten year period. Thus, at trial, the state was only required to prove possession and intent. It is undisputed that the defendant was driving the vehicle when it was stopped by the officers. Moreover, when the officer ordered the defendant to exit the car, he quickly complied, slammed the door shut, and went to the rear of the vehicle. The officers subsequently opened the car door and observed the gun on the driver's side sticking out from between the seat and the console. The gun was thereafter found to contain a live round of ammunition.
Although the defendant presented evidence that both the gun and the car belonged to Noel Epps, the jury obviously chose to reject that testimony. It is not the function of the appellate court to evaluate the credibility of the witnesses and to overturn the trial court on its factual determination of guilt. Such factual determinations are entitled to great weight and will not be disturbed unless clearly contrary to the evidence. State v. Francis, supra.
Based on the foregoing discussion, we find that the evidence presented was sufficient to sustain the defendant's conviction for a violation of LSA-R.S. 14:95.1. Accordingly, this assignment lacks merit.

ERROR PATENT DISCUSSION
We have also reviewed the record for errors patent in accordance with LSA-C.Cr.P. art. 920 and State v. Oliveaux, 312 So.2d 337(La.1975).
Such a review reveals that the trial judge failed to advise the defendant of the prescriptive period for post conviction relief as mandated by LSA-C.Cr.P. art. 930.8(C). LSA-C.Cr.P. art. 930.8 provides that a defendant has three years after his judgment of conviction and sentence becomes final within which to apply for postconviction relief. Subpart C of the article requires that the trial court inform the defendant of the three year prescriptive period at the time of sentencing. In accordance with this mandate, the trial judge is ordered to inform the defendant of the provisions of this article by sending appropriate written notice to him within ten days of this opinion and to file written proof that the defendant received such notice. State v. Bates, 96-9 (La.App. 5 Cir. 4/16/96), 673 So.2d 1085.
We further note that the sentence imposed on the defendant was illegally lenient. The penalty provision for illegal possession of a firearm by a convicted felon is set forth in LSA-R.S. 14:95.1(B) as follows:
Whoever is found guilty of violating the provisions of this Section shall be imprisoned at hard labor for not less that ten nor more than fifteen years without benefit of probation, parole, or suspension of sentence and be fined not less than one thousand dollars nor more than five thousand dollars.
In the present case, the judge sentenced the defendant to twelve years at hard labor; however, he failed to specify that the defendant's sentence be served without benefit of parole, probation or suspension, and he failed to impose the mandatory fine. However, we will not amend or set aside this illegally lenient sentence as the defendant alone has appealed and the prosecutor has not sought review of the sentence. State v. Fraser, 484 So.2d 122 (La.1986); State v. Francis, supra.
For the reasons set forth herein, the defendant's conviction and sentence are affirmed and the case is remanded to the trial court for further action in accordance with this opinion.
*946 CONVICTION AND SENTENCE AFFIRMED, REMANDED FOR FURTHER PROCEEDINGS.
NOTES
[1] This court recently, in the related case of State v. Curtis, 98-1283 (La.App. 5 Cir. 6/1/99), addressed the officers' search of the vehicle and subsequent seizure of the cocaine. In that case, the court concluded, based on the plain view doctrine, that the trial judge did not err in denying the defendant's motion to suppress the cocaine.
[2] Although not necessary, we note that the search of the vehicle was also justified as incident to a lawful arrest. See State v. Freeman, 97-1115 (La.App. 5 Cir. 12/29/98), 727 So.2d 630.
[3] Although distinguishable from the instant case, see State v. Brooks, 633 So.2d 659 (La. App. 1 Cir.1993), writ denied, 94-0308 (La.5/20/94), 637 So.2d 475, where the court concluded that the trial judge acted appropriately in remanding the jury to deliberate further, even though the verdict had been recorded by the clerk.
[4] In the Evans case, the court, in a footnote, explained that "[a]wareness is one of those intangibles that seems to overlap into both the possession and intent elements of La. R.S. 14:95.1. However, a careful review of recent decisions on the offense of La. R.S. 14:95.1 indicates that awareness is used to prove `possession,' although awareness must exist to have intent."